1

**P O R T E R | S C O T T**

A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Matthew W. Gross, SBN 324007
mgross@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF PLACER, PLACER COUNTY SHERIFF'S OFFICE,
WAYNE WOO, MICHAEL CODY, MELISSA ADAMS, and CLAUDELL VAUGHAN
*Exempt from Filing Fees Pursuant to Government Code § 6103*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CHRISTOPHER TEMPLE and AMBER SMITH,<br><br>                    Plaintiff,<br><br>v.<br><br>COUNTY OF PLACER, PLACER COUNTY SHERIFF'S OFFICE, WAYNE WOO, MICHAEL CODY, MELISSA ADAMS, and CLAUDELL VAUGHAN,<br><br>                    Defendants.<br>_____/ | CASE NO.  2:23-cv-01713-JAM-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:          January 16, 2024<br>Time:          1:30 p.m.<br>Courtroom:  6, 14th Floor<br>Judge:         Hon. John A. Mendez<br><br>Complaint Filed:  8/14/2023 |

1

**Table of Contents**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................2

      A.    General Allegations ..................................................................................2

      B.    Allegations Against Sheriff Woo .............................................................3

      C.    Monell-Type Allegations Asserted Against All Defendants ....................4

III.  LEGAL STANDARD ...........................................................................................5

IV.   ARGUMENT ........................................................................................................6

      A.    Plaintiffs' Allegations Do Not Establish Monell Liability Under 42 U.S.C.
            § 1983 .......................................................................................................6

      B.    Plaintiff's First Claim For Relief Against Sheriff Woo For Excessive Force
            Under 42 U.S.C. § 1983 Fails As A Matter Of Law ...............................10

      C.    Plaintiff's Second Claim For Against All Defendants For Unreasonable
            Medical Care Under 42 U.S.C. § 1983 Fails As A Matter Of Law ..................12

      D.    Plaintiff's Third And Fourth Claims Against All Defendants For
            Rehabilitation Act And Americans With Disabilities Act Fails As A Matter
            Of Law .....................................................................................................14

      E.    Plaintiff's Fifth And Sixth Claims Against Sheriff Woo For Unwarranted
            Interference With Familial Association Pursuant To 42 U.S.C. § 1983 Fail
            As A Matter Of Law ................................................................................18

      F.    Plaintiff's Seventh And Eighth Claim For Excessive Force And
            Unreasonable Medical Care Pursuant To California Constitution Article 1
            Section § 13 Fails As A Matter Of Law Against All Defendants ..................19

      G.    Plaintiff's Ninth Claim For Relief Against Sheriff Woo For Bane Act
            Under Civil Code § 52.1 Fails To State Sufficient Facts ........................22

      H.    Plaintiff's Twelfth Claim And Thirteenth Claims For Relief Against Sheriff
            Woo For State-Law Negligence And Wrongful Death Claims Fails To
            State A Viable Claim ...............................................................................23

VI.   CONCLUSION ...................................................................................................24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

4873-7032-4611, v. 3

**Table of Authorities**

Page(s)

**Cases**

Albrecht v. Lund,
   845 F.2d 193 (9th Cir.) ................................................................................................. 6

Alford v. Humboldt County,
   785 F.Supp.2d 867 (N.D. Cal. 2011) ........................................................................... 13

Arceo v. City of Roseville,
   2023 WL 5417210 (E.D. Cal., August 22, 2023) ......................................................... 24

Autotek Inc. v. Cnty. of Sacramento,
   No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923 (E.D. Cal. July 25, 2017) .................... 19

Balistreri v. Pacifica Police Dep't,
   901 F.2d 696 (9th Cir. 1988) ........................................................................................ 6

Barren v. Harrington,
   152 F.3d 1193 (9th Cir. 1998) ...................................................................................... 18

Bd. of Cnty. Comm'rs v. Brown,
   520 U.S. 397 (1997) ................................................................................................. 8, 9

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ..................................................................................................... 5

Bivens v. Six Unknown Fed. Narcotics Agents,
   403 U.S. 388 (1971) .................................................................................................... 20

Borges v. City of Eureka,
   No. 15-cv-00846-YGR, 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) ............................. 13

Bresaz v. Cty. of Santa Clara,
   136 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................................... 15

Brown v. County of Kern,
   No. 1:06-CV-00121 OWW TAG, 2008 WL 544565 (E.D. Cal. Feb. 26, 2008) ................ 20

Buzayan,
   2007 WL 2288334 ....................................................................................................... 21

Cavanaugh,
   2020 WL 6703592 n.21 ............................................................................................... 19

City of Canton, Ohio v. Harris,
   489 U.S. 378 (1989) ............................................................................................ 6, 7, 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

4873-7032-4611, v. 3

Clegg v. Cult Awareness Network,
    18 F.3d 752 (9th Cir. 1994) .................................................................................................... 6

Conley v. Gibson,
    355 U.S. 41 (1957) ................................................................................................................. 6

Connick v. Thompson,
    563 U.S. 51 (2011) .............................................................................................................. 8, 9

Cornell v. City & Cty. of San Francisco,
    17 Cal. App. 5th 766 (Nov. 17, 2017) ................................................................................. 22

Davis v. City of Ellensburg,
    869 F.3d 1230 (9th Cir. 1989) .............................................................................................. 10

De La Cruz v. Tormey,
    582 F.2d 45 (9th Cir. 1978) .................................................................................................... 6

Dunbar v. City of Riverside,
    2014 WL 129622881 (C.D. Cal. 2014) ................................................................................ 13

Duvall v. Cty. of Kitsap,
    260 F.3d 1124 (9th Cir. 2001) .................................................................................. 14, 15, 16

Est. of Osuna v. Cnty. of Stanislaus,
    392 F. Supp. 3d 1162 (E.D. Cal. 2019) .......................................................................... 18, 22

Estate of Alejandro Sanchez v. County of Stanislaus,
    No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, (E.D. Cal. 2019) (dismissing .......................... 23

Estate of Bonilla v. County of Merced,
    2019 WL 1405551 (E.D. Cal. 2019) ..................................................................................... 24

Estate of Brooks ex rel. Brooks v. United States,
    197 F.3d 1245 (9th Cir. 1999) .............................................................................................. 18

Estate of Cornejo v. City of L.A.,
    618 Fed. Appx. 917 (9th Cir. 2015) ..................................................................................... 14

Estate of F.R. Jr. v. County of Yuba,
    (E.D. Cal., September 19, 2023, 2:23-cv-00846 WBS-CKD) 2023 WL 6130049 ............................. 19

Estate of Jackson v. City of Modesto,
    2021 WL 4819604 (E.D. Cal. 2021) ..................................................................................... 15

Gillette v. Delmore,
    979 F.2d 1342 (9th Cir. 1992) ................................................................................................ 7

Hall v. City of Walnut Creek,
    2020 WL 408989 (N.D. Cal. Jan. 24, 2020) ................................................................... 16, 17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

Harper v. Cty of Merced,
    2020 WL 243118 (E.D. Cal. Jan. 16, 2020) .................................................................. 17

Herrera v. L.A. Unified Sch. Dist.,
    18 F.4th 1156 (9th Cir. 2021) ......................................................................................... 9

Hui Jie Jin v. Alameda Cty.,
    2019 WL 7831143 (N.D. Cal. Feb. 4, 2019) ............................................................ 16, 17

Iqbal,
    556 U.S. ...................................................................................................................... 9, 12

Juricich v. Cty. of San Mateo,
    2020 WL 619840 (N.D. Cal. Feb. 10, 2020) .................................................................. 16

Katzberg v. Regents of University of California,
    29 Cal.4th 300 (2002) ........................................................................................ 20, 21, 22

Kaur v. City of Lodi,
    263 F. Supp. 3d 947 (E.D. Cal. 2017) ............................................................................ 18

Keates v. Koile,
    883 F.3d 1228 (9th Cir. 2018) ........................................................................................ 19

Krainski v. Nev. ex rel. Bd. of Regents,
    616 F.3d 963 (9th Cir. 2010) .......................................................................................... 11

Krause v. Cnty. of Mohave,
    846 F. Appx 569 (9th Cir. 2021) ..................................................................................... 14

Lanier v. City of Fresno,
    2011 U.S. Dist. LEXIS 4631 (E.D. Cal. 2011) .............................................................. 22

Lapachet v. California Forensic Medical Group Inc., No: 1:17–cv–01226–DAD–EPG,
    313 F.Supp.3d 1183, (E.D. Cal. 2018) ........................................................................... 23

Larez v. City of Los Angeles,
    946 F.2d 630 (9th Cir. 1991) .......................................................................................... 10

Leon v. City Of Merced,
    No. 1:14-cv-01129 GEB, 2015 WL 135904 (E.D. Cal. Jan. 9, 2015) ........................... 20

Lesher v. City of Anderson,
    No. 2:21-cv-00386-WBS-DMC, 2021 WL 2682161 (E.D. Cal. June 30, 2021)............. 19

Libby v. City of Girdley,
    (E.D. Cal., February 17, 2022, 2:21-cv-00017-JAM-AC) 2022 WL 493079.................... 19

Long v. City and County of Honolulu,
    511 F.3d 901 (9th Cir. 2007) .......................................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Long v. County of Los Angeles,
   442 F.3d 1178 (9th Cir. 2006) ........................................................................... 8

Lopez v. Smith,
   203 F.3d 1122 (9th Cir. 2000) ........................................................................... 6

Maddox v. City of Los Angeles,
   792 F.2d 1408 (9th Cir. 1986) ......................................................................... 13

Manning v. City of Rohnert Park,
   No. 06-cv-03435 SBA, 2007 WL 1140434 (N.D. Cal. 2007) ......................... 20

Mejia v. City of San Bernardino,
   No. 11–cv–452, 2012 WL 1079341 ............................................................ 13, 14

Merritt v. County of Los Angeles,
   875 F.2d 765 (9th Cir. 1989) ............................................................................. 8

Monell v. Dep't of Soc. Servs. of City of New York,
   436 U.S. 658 (1978) ...................................................................................... 6, 7

Moss v. U.S. Secret Serv.,
   572 F.3d 962 (9th Cir. 2009) ......................................................................... 5, 17

Oviatt By & Through Waugh v. Pearce,
   954 F.2d 1470 (9th Cir. 1992) ........................................................................... 7

Pareto v. FDIC,
   139 F.3d (9th Cir. 1998) .................................................................................... 9

Patel v. Kent Sch. Dist.,
   648 F.3d (9th Cir. 2011) .................................................................................... 9

Quiroz v. Seventh Ave. Ctr.,
   140 Cal. App. 4th 1256 (2006) ....................................................................... 23

Ramirez v. County of El Dorado,
   2020 WL 1673898 (E.D. Cal. Apr. 06, 2020) ................................................. 21

Razavi v. Martins,
   2018 WL 1933482 (N.D. Cal. Apr. 24, 2018) ................................................. 17

Reese v. Cty. of Sacramento,
   888 F.3d 1030 (9th Cir. 2018) ......................................................................... 22

Rios v. County of Sacramento,
   562 F. Supp. 3d 999 (E.D. Cal. 2021) ............................................................. 19

Rosenbaum v. City of San Jose,
   No. 20-CV-04777-LHK, 2021 WL 6092205 (N.D. Cal. Dec. 23, 2021) ......... 10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

Roy v. Cty. of Los Angeles,
    114 F. Supp. 3d 1030 (2015) ............................................................................... 20, 21

S. E. C. v. Seaboard Corp.,
    677 F.2d 1315 (9th Cir. 1982) ...................................................................................... 6

Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail,
    628 F. App'x 527 (9th Cir. 2016) ............................................................................... 18

Sheehan v. City and County of San Francisco,
    743 F.3d 1211 (9th Cir. 2014) .................................................................................... 16

Simmons v. Navajo Cty., Ariz.,
    609 F.3d 1011 (9th Cir. 2010) .................................................................................... 14

Starr v. Baca,
    652 F.3d 1202 (9th Cir. 2011) ....................................................................... 10, 12, 19

Sullivan v. Biter,
    No. 1:15-cv-00243-DAD-SAB, 2017 WL 1540256 (E.D. Cal. Apr. 28, 2017) ................. 11

Sweiha v. Cty. of Alameda,
    2019 WL 4848227 (N.D. Cal. Oct. 1, 2019).......................................................... 16, 17

Tatum v. City and Cnty. of San Francisco,
    441 F.3d 1090 (9th Cir. 2006) .................................................................................... 13

Tennyson v. Cty. of Sacramento,
    No. 219CV00429KJMEFB, 2020 WL 4059568 (E.D. Cal. July 20, 2020) ........................ 15

Trevino v. Gates,
    99 F.3d 911 (9th Cir. 1996) .................................................................................... 7, 12

Via v. City of Fairfield,
    833 F. Supp. 2d 1189 (E.D. Cal. 2011)........................................................................ 9

W. Min. Council v. Watt,
    643 F.2d 618 (9th Cir. 1981) ...................................................................................... 6

Weaver By & Through Weaver v. State,
    63 Cal. App. 4th 188 (1998) ...................................................................................... 24

Wigfall v. City & County of San Francisco,
    No. 06-cv-4968 VRW, 2007 WL 174434 (N.D. Cal. Jan. 22, 2007) ............................... 20

Wilson v. Meeks,
    52 F.3d 1547 (10th Cir. 1995) .................................................................................... 14

Young v. City of Visalia,
    687 F. Supp. 2d 1141 (E.D. Cal. 2009)......................................................................... 7

7

**Statutes**

29 U.S.C.A. § 701 .................................................................................................................... 1

42 U.S.C. § 1983 ........................................................................................................ 10, 12, 18

42 U.S.C.A. § 12101 ............................................................................................................... 1

Cal. Const. art. I .................................................................................................................... 1

Cal. Const. Art. I .................................................................................................................. 21

Cal. Gov't Code section 820.8 ........................................................................................ 21, 24

California Constitution Article 1 ...................................................................................... 2, 19

California Constitution Article 1 § 13 ................................................................................... 2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

4873-7032-4611, v. 3

# I.    **INTRODUCTION**

Plaintiffs ESTATE OF CHRISTOPHER TEMPLE and AMBER SMITH (collectively "Plaintiffs") First Amended Complaint alleges thirteen total claims for relief against Defendants COUNTY OF PLACER, PLACE COUNTY SHERIFF'S OFFICE, WAYNE WOO, CODY MICHAEL, MELISSA ADAMS, and CLAUDELL VAUGHAN (collectively "Defendants"). Defendants move to dismiss the following claims:

1.      Plaintiffs' First Claim—Excessive Force pursuant to 42 U.S.C.A. § 1983 against Sheriff Woo, County of Placer, and Placer County Sheriff's Office;

2.      Plaintiffs' Second Claim—Unreasonable Medical Care pursuant to 42 U.S.C.A. § 1983 against all Defendants;

3.      Plaintiffs' Third Claim— Rehabilitation Act, 29 U.S.C.A. § 701, et seq., against all Defendants;

4.      Plaintiffs' Fourth Claim—Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101, et seq. against all Defendants;

5.      Plaintiffs' Fifth Claim—Unwarranted Interference with Familial Association pursuant to 42 U.S.C.A. § 1983, 14th Amendment, against Sheriff Woo, County of Placer, and Placer County Sheriff's Office;

6.      Plaintiffs' Sixth Claim—Unwarranted Interference with Familial Association pursuant to 42 U.S.C.A. § 1983, 1st Amendment, against Sheriff Woo, County of Placer, and Placer County Sheriff's Office;

7.      Plaintiffs' Seventh Claim—Excessive Force pursuant to Cal. Const. art. I, § 13 against all Defendants;

8.      Plaintiffs' Eighth Claim—Unreasonable Medical Care pursuant to Cal. Const. art. I, § 13 against all Defendants;

9.      Plaintiffs' Ninth Claim—Bane Act pursuant to Civil Code § 52.1 against Sheriff Woo, County of Placer, and Placer County Sheriff's Office;

10.     Plaintiffs' Twelfth Claim—Negligence against Sheriff Woo

11.     Plaintiffs' Thirteenth Claim—Wrongful Death pursuant to Civil Code § 377.6 against

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

Sheriff Woo;

This Motion to Dismiss ("Motion") seeks to dismiss all claims for relief against Sheriff Woo and Plaintiffs' Second, Third, Fourth, Seventh and Eighth claims against all Defendants. Plaintiffs fail to allege any conduct by Sheriff Woo in his individual capacity that would expose him to liability. Plaintiffs further fail to allege any act or omission on the part of the County and Sheriff's Department sufficient to state any claim that Defendants violated Plaintiff's right to medical care, the Rehabilitation Act ("RA") or the ADA, or claims arising from the California Constitution Article 1 § 13. Plaintiffs assert <u>Monell</u> claims. Those must be dismissed because the Complaint fails to plead allegations to plausibly suggest there is a policy or custom that was the moving force behind the constitutional violations Plaintiffs allege.  The Complaint also fails to identify the training practices at issue, how those practices were deficient, how those practices caused Decedent's harm, and how the deficiency amounts to deliberate indifference.  Such does not plausibly suggest entitlement to relief, nor does it constitute compliance with the applicable pleading standard for <u>Monell</u> claims. Based on the following points and authorities, Defendants request the Court to dismiss Plaintiffs' claims against Sheriff Woo and Plaintiffs' Second, Third, Fourth, Seventh and Eighth claims against all Defendants.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    General Allegations

Plaintiffs allege that on January 10, 2023, around 11:50 p.m., Christopher Temple was driving a vehicle in Auburn, California. (ECF 12 ¶ 22). Plaintiffs allege Placer County Sheriff's Office deputies pulled Plaintiff over near 3760 Grass Valley Highway, Auburn, California. (ECF 12 ¶ 23-25). Plaintiffs claim Defendants Deputies Michael, Adams, and Vaughan were present at the scene. (ECF 12 ¶ 26) During the vehicle stop, Christopher Temple informed deputies he was on probation. (ECF 12 ¶ 32-33). Christopher Temple refused to comply with Deputies Adams commands to show his hands and began pulling away from Deputy Adams. (ECF 12 ¶ 37-40) A struggle occurred between Deputy Adams and Christopher Temple inside the car before Deputies Michael, Adams, and Vaughan retreated from the vehicle door and stepped back. (ECF 12 ¶ 45)

Christopher Temple exited the vehicle with a two-and one-half inch blade pocketknife in his right hand. (ECF 12 ¶ 47) Deputy Adams called out "Gun!" before correcting herself and ordering

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

4873-7032-4611, v. 3

Christopher Temple to "Drop the knife." (ECF 12 ¶ 43, 49) Christopher Temple walked around the driver side door of his vehicle and about 30 feet in front of his vehicle. (ECF 12 ¶ 48) Deputies Michael, Adams, and Vaughan pointed their pistols at Christopher Temple. (ECF 12 ¶ 51). Christopher Temple yelled "Shoot me! Just fucking shoot me! Shoot me! Do it!" (ECF 12 ¶ 52) None of the deputies had a taser on their utility belt. (ECF 12 ¶ 56-57)

Christopher Temple began slowly walking towards deputies with the knife. (ECF 12 ¶ 59) Deputies Michael, Adams, and Vaughan stepped back. (ECF 12 ¶ 60) Christopher Temple "took two large steps" towards Deputies Michael, Adams, and Vaughan while still holding the knife in his right hand. (ECF 12 ¶ 61). Deputies Michael, Adams, and Vaughan fired several gun shots and Christopher Temple fell to the ground in front of his vehicle and dropped the pocketknife. (ECF 12 ¶ 63-64) Deputies Michael, Adams, and Vaughan continued to point firearms at Christopher Temple while he remained on the ground with the knife lying next to him. (ECF 12 ¶ 66-72).

Christopher Temple stood back up and grabbed the pocketknife on the ground. (ECF 12 ¶ 74). Deputies Michael, Adams, and Vaughan backed up. (ECF 12 ¶ 72) Christopher Temple advanced on Deputies Michael, Adams, and Vaughan again while holding the knife. (ECF 12 ¶ 76-79). Deputies Michael and Adams shot Christopher Temple again. (ECF 12 ¶ 78-79) Christopher Temple fell to the ground again and dropped the pocketknife. (ECF 12 ¶ 81-82)

After approximately 50 seconds, Deputy Vaughan told the dispatcher "don't send in medical yet" while the scene remained active. (ECF 12 ¶ 85). Deputies Adams and Vaughan then moved forward and applied handcuffs. (ECF 12 ¶ 88) After another minute and a half, Deputy Adams began CPR and rendering medical aid. (ECF 12 ¶ 90) Christopher Temple died at the scene and his cause of death was identified as "gunshot wounds to the chest and lower torso." (ECF 12 ¶ 93-94).

B.    **Allegations against Sheriff Woo**

Plaintiffs allege Sheriff Woo "is a final policy-making for Defendants County of Placer and Placer County Sheriff's Office" under state law and Placer County sheriff's Office General Order Admin 1, and has been elected Sheriff of Placer County since June 2022. (ECF 12 ¶ 99-100). Plaintiffs allege Sheriff Woo "maintained inadequate policies or customs of training, supervision, and discipline of officers under their command related to confrontations with persons experiencing or suffering from

documented or apparent mental health crises." (ECF 1 ¶ 101)

### C. Monell-Type Allegations Asserted Against All Defendants

As has become their custom, Plaintiffs' counsel engages in shotgun type pleadings, blasting forth a series of conclusory allegations that are not tethered to this specific case. It is alleged that the County/Sheriff's Department "maintained inadequate policies or customs of training, supervision, and discipline of officers under their command related to confrontations with persons experiencing or suffering from documented or apparent mental health crises." (Id. at ¶ 101).

Plaintiffs assert the County/Sheriff's Department "failed to promulgate specific policies and customs and to train officers under their command in the application of necessary policies, including those prescribed by California Peace Officer Standards and Training ("POST") learning domains, including Learning Domain 20 ("Use of Force/Deescalation"); POST Learning Domain 26 ("Critical Incidents"); POST Learning Domain 33 ("Arrest Methods/Defensive Tactics"); and POST Learning Domain 37 ("People with Disabilities")." (Id. at ¶ 103).

Plaintiffs assert the County/Sheriff's Department "failed adequately to prepare and train officers under their command in critical areas, including Defendants" on (a) how and when to call for the assistance of officers or professionals with specialized training in dealing with mental illness, when possible; (b) how and when to approach persons suffering from mental disability or substance impairment; (c) how and when to speak to persons suffering from a mental disability or substance impairment; (d) how and when to interact with persons suffering from mental disability or substance impairment (including using appropriate body language and tone of voice); (e) how and when to respect the personal space of persons suffering from mental disability or substance impairment; (f) how and when to provide reasonable accommodations for persons suffering from mental disability or substance impairment; and (g) how and when to de-escalate, without use of force, incidents involving persons suffering from mental disability or substance impairment." (Id. at ¶ 104).

Plaintiffs assert the County/Sheriff's Department "knowingly participated in, acquiesced to, and/or were deliberately indifferent to the creation and maintenance of a culture permitting or encouraging personnel's use of unreasonable and excessive force." (Id. at ¶ 105).

Plaintiffs assert the County/Sheriff's Department "should have been on notice regarding the need

1   to discontinue, modify, or implement new and different versions of the deficient policies or customs

2   because the inadequacies constituted life-threatening decisions and were so obvious and likely to result

3   in violations of rights of persons coming into contact with their personnel." (Id. at ¶ 108).

4       Lastly, Plaintiffs allege that the County/Sheriff's Department's inadequate policies, customs,

5   training, supervision, and control of personnel and inmates was a moving force behind and contributed

6   to the death of the Decedent. (Id. at ¶ 109.)

7       Based on the above allegations, Plaintiffs assert a variety of *Monell*-type claims for relief: First

8   claim – Excessive force (Id. at ¶ 110); Third claim – Rehabilitation Act (Id. at ¶ 122); Fourth Claim –

9   ADA claim (Id. at ¶ 128); Fifth claim - Unwarranted Interference with Familial Association (Fourteenth

10  Amendment) (Id. at ¶ 134); Sixth Claim - Unwarranted Interference with Familial Association (First

11  Amendment) (Id. at ¶ 141); Seventh Claim – State Law Excessive Force (Id. at ¶ 148); Eighth Claim –

12  State Law Unreasonable Medical Care (Id. at ¶ 155); Ninth Claim – Tom Bane Act (Id. at ¶ 162); Tenth

13  Claim – Assault/Battery (Id. at ¶ 175); Eleventh Claim – Intentional Infliction of Emotional Distress (Id.

14  at ¶ 181); Twelfth Claim – Negligence (Id. at ¶ 187); and Thirteenth Claim - Wrongful Death (Id. at ¶

15  194)

### III.   LEGAL STANDARD

17      To survive a Motion to Dismiss under Federal Rules of Civil Procedure ("F.R.C.P.") Rule

18  12(b)(6), a plaintiff must make a "short and plain statement" providing "enough facts to state a claim for

19  relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (quoting Rule

20  8(a)(2)). Survival requires more than a statement that is merely consistent with a valid theory of

21  recovery. Id. at 557. Rather, the statement must include "enough factual matter (taken as true) to

22  suggest" a right to relief. Id. at 556 (parentheses in original). In other words, the statement must have

23  "enough heft to show that the pleader is entitled to relief" and must "raise a right to relief above a

24  speculative level." Id. at 557. Thus, the Ninth Circuit has summarized the governing standard, in light of

25  Twombly and Iqbal, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-

26  conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of

27  a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

28      Dismissal under Fed. R. Civ. P. 12(b)(6) is proper where there is either a "lack of a cognizable

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). The Court must determine whether plaintiffs would be entitled to some form of relief if the facts alleged in the complaint were true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). However, the Court need not accept as true, conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. Clegg v. Cult Awareness Network, 18 F.3d 752, 754–755 (9th Cir. 1994); S. E. C. v. Seaboard Corp., 677 F.2d 1315, 1316 (9th Cir. 1982); W. Min. Council v. Watt, 643 F.2d 618, 630 (9th Cir. 1981).

Further, "leave to amend may be denied...if amendment of the complaint would be futile...If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), amended, 856 F.2d 111 (9th Cir. 1988); Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV.   ARGUMENT

### A.   Plaintiffs' Allegations Do Not Establish Monell Liability Under 42 U.S.C. § 1983

Plaintiffs' Monell claims are outlined in Section II. C., above. Generally, Plaintiffs allege that the County had an unconstitutional policy regarding mental health crises which was the moving force behind the alleged damages. (ECF 12, at ¶ 100-109) Plaintiffs base this on a single incident theory to establish their Monell claim. It is further alleged that the County failed to promulgate specific polices and to train its personnel. (ECF 12, at ¶ 100, 101, 103-105) Throughout the complaint, embedded within the various causes of action, Plaintiffs assert that there is Monell liability. (ECF 12 at ¶ 113, 119, 126, 132, 138, 145, 151, 158, 165, 167, 169, 171) As to the Sec. 1983 claims it is asserted the Defendants "maintained policies or customs of action and inaction to CHRISTOPHER TEMPLE, in violation of the Fourth Amendment to the U.S. Constitution." (ECF 12 at ¶ 113) For the disability related claims, it is asserted defendants "maintained policies or customs of action and inaction which failed reasonably to accommodate Plaintiff's disabilities…." (ECF 12 ¶ 126)

Public entities are not vicariously liable for the actions of their employees under Section 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94 (1978); City of Canton, Ohio

v. Harris, 489 U.S. 378, 385 (1989). Municipal liability arises only when the plaintiff shows: (1) the deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. City of Canton, Ohio, 489 U.S. at 389; Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). The municipal policy at issue must be the result of a decision of a person employed by the entity who has final decision or policymaking authority. Monell, 436 U.S. at 694.

If the claim is based on a custom, it must be shown that the custom is so widespread and so permanent and well-settled as to have the force of law. Gillette v. Delmore, 979 F.2d 1342, 1348-49 (9th Cir. 1992). It must constitute "standard operating procedure" for the local government entity. Young v. City of Visalia, 687 F. Supp. 2d 1141, 1147-8 (E.D. Cal. 2009). Liability for improper custom cannot be based on sporadic events, but must be founded on practice of sufficient duration, frequency, and consistency that the conduct has become a traditional method for carrying out policy. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiffs claim as to a policy or custom fails as a matter of law. Plaintiffs' complaint vaguely cites to the following policies: "Placer County Sheriff's Office General Order OPER 1 ("Use of Force"); Placer County Sheriff's Office General Order OPER 2 ("Firearms"); Placer County Sheriff's Office Filed Operations No. 3-05 ("Crisis Negotiations"); and Placer County Sheriff's Office Filed Operations No. 5-01 ("5150 W&I Commitment Procedures")" (ECF 12 ¶ 58) and "Placer County Sheriff's Office General Order OPER 1 ("Use of Force"); Placer County Sheriff's Office General Order OPER 8 ("Arrest and Control Techniques"); and Placer County Sheriff's Office General Order OPER 9 ("Restraints")" (ECF 12 ¶ 92). However, Plaintiffs do not describe or plead any complaints regarding the specific contents within these policies, or how any of these policies are the moving force behind the constitutional violation. Plaintiffs' general references to the California POST learning domains is not Monell liability. (ECF 12 ¶ 41, 58, 80, 92) As such, the only basis of liability could be under a theory that there was some sort of custom.  However, there are no facts alleged regarding the duration, frequency or consistency of the alleged custom.  As such, the claim fails.

Plaintiffs suggest that Defendants "failed to promulgate specific policies and customs." (ECF 12,

7

at ¶ 103) However, Plaintiffs do not identify a specific policy that it failed to promulgate. Instead, it vaguely references general POST standards. (ECF 12, at ¶ 103) Nor, are there any facts establishing any policy not implemented was a cause of the constitutional violation.  There are no facts connecting a lack of a certain policy to Christopher Temple's vehicle stop and use of force.

In order to state a claim for failure to train under <u>Monell</u>, a plaintiff must allege that: (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the officials have been deliberately indifferent to the rights of the persons with whom the police come into contact; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." See <u>Merritt v. County of Los Angeles</u>, 875 F.2d 765, 770 (9th Cir. 1989). The deliberate indifference standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011) (internal citations omitted). However, "[a] plaintiff . . . might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 409 (1997)).

In a conclusory fashion, Plaintiffs suggest that <u>Monell</u> liability in this case can be based on a failure to train. The standard for a failure to train is even more stringent. Here, there are no facts alleged that the Sheriff's Department failed to train its deputies, and that failure was a cause of the alleged constitutional violation. There are no facts alleged that the Department knew or should have known there was a problem with its training. Plaintiffs have not alleged any pattern of similar constitutional violations, nor have they provided any other factual allegations suggesting deliberate indifference. The complaint generically states that the municipal defendants "were or should have been on notice" regarding the inadequacy of their policies or training "because the inadequacies of the policies,

AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
4873-7032-4611, v. 3

procedures, and training constituted life-threatening decisions and were so obvious and likely to result in the violation of rights of persons coming into contact with their personnel." (ECF 12 ¶ 108.) There are no underlying factual allegations that support this conclusion. As a result, plaintiffs have failed to state a Monell claim based on failure to train. See Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1196 (E.D. Cal. 2011) (Shubb, J.) ("Since Iqbal, courts have repeatedly rejected . . . conclusory allegations that lack factual content from which one could plausibly infer Monell liability.") (collecting cases).

However, most damning, as to all the different types of Monell liability alleged, is that there are no facts to support a finding of deliberate indifference.  This is a high standard. Even gross negligence is not enough.   "Deliberate indifference" requires a "culpable mental state" more than "gross negligence." Patel v. Kent Sch. Dist., 648 F.3d at 974 (9th Cir. 2011).   The defendant "must 'recognize the unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" Herrera v. L.A. Unified Sch. Dist., 18 F.4th 1156, 1158 (9th Cir. 2021) There are no facts alleged that would meet this high standard.

Primarily, Plaintiffs make a variety of conclusory allegations against Defendants. Those claims fail because the allegations in support thereof are wholly conclusory and not entitled to the presumption of truth. Pareto v. FDIC, 139 F.3d at 699 (9th Cir. 1998); Iqbal, 556 U.S. at 677, 678-79.

As pointed out above, generally, Plaintiffs must set forth facts showing a pattern of similar violations.  Plaintiffs seemingly attempt to avoid this requirement by alleging "inadequacies [of the policies, procedures, and training] constituted life-threatening decisions and were so obvious." (ECF No. 1, at ¶ 108) This is not one of those "obvious" cases in which a single incident can be used to establish liability.  See the discussion in Connick, 563 U.S. at 63:

> [In Bryan Cty] [t]he Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Canton, supra, at 390, n. 10, 109 S.Ct. 1197. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on *64 the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. Bryan Cty., supra, at 409, 117 S.Ct. 1382.

9

There is nothing in this case that is even remotely close to the type of "obviousness" outlined above. Plaintiffs' <u>Monell</u>-type claims are based solely on what allegedly occurred during Temple's use of force shooting. (ECF 12). However, such is insufficient to establish a viable <u>Monell</u> claim, where liability cannot be based on sporadic events, but must be founded on practice of sufficient duration, frequency, and consistency that the conduct has become a traditional method for carrying out policy. <u>Rosenbaum v. City of San Jose</u>, No. 20-CV-04777-LHK, 2021 WL 6092205, at *20 (N.D. Cal. Dec. 23, 2021) (holding that [a Plaintiff] "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.") (quoting <u>Davis v. City of Ellensburg</u>, 869 F.3d 1230, 1233 (9th Cir. 1989); <u>Benavidez v. County of San Diego</u>, No. 19-55274, 2021 WL1343530, at *13 (9th Cir. 2021); <u>Tabayoyon v. City of Vacaville</u>, No. 19-2022, 2021 WL10723, at *7 (E.D. Cal. Mar. 31, 2020). Plaintiffs' allegations do not identify a deficient policy or custom sufficient to establish liability under <u>Monell</u>.

The facts alleged in the Complaint fail to state a plausible claim that interactions with motorist during a traffic stop suffering from a mental health crisis is so widespread and permanent that it has the force of law within the County Sheriff's Department. Because the Complaint does not identify the challenged practices, how those practices were deficient and does not identify the obviousness of the risk involved, dismissal is appropriate. As such, any such argument should be rejected.

**B.    Plaintiffs' First Claim for Relief Against Sheriff Woo for Excessive Force under 42 U.S.C. § 1983 Fails as a Matter of Law**

To state a Section 1983 claim against a supervisor, a plaintiff must allege: "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal citation omitted); see also <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 645 (9th Cir. 1991) (explaining a "supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury" yet "this does not prevent a supervisor from being held liable in his individual capacity.").

Here, Plaintiffs present the vague and conclusory allegations that Sheriff Woo, as the "final policymaking authority" for the County and Placer County Sheriff's Office, knowingly participated in,

---

10

acquiesced to, and/or were deliberately indifferent to the creation and maintenance of a culture permitting or encouraging personnel's use of unreasonable and excessive force. (ECF 21 at ¶¶ 99-109, 113, 115) In addition, Plaintiffs merely allege Sheriff Woo's "actions and inactions were motivated by evil motive or intent." (Id. at ¶ 114.) Plaintiffs fail to allege any specific facts to support his conclusory allegations. Plaintiffs only point to the single incident at issue here as demonstrative of his claim that there existed a policy or custom of excessive force by Placer County. (ECF 12 at ¶ 102.) Plaintiffs claim that Sheriff Woo "knew or should have known" of prior contacts between Placer County Sheriff's Office deputies used "force had been applied involved mentally ill" suspects and failed to take appropriate action. (ECF 12 ¶ 102) However, Plaintiffs do not actually identify any alleged prior incidents. (ECF 1 ¶¶ 99-109, 113, 115) This is insufficient to state a claim against Sheriff Woo. Krainski v. Nev. ex rel. Bd. of Regents, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing a complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew, or should have known'' " of the violation); *Sullivan v. Biter*, No. 1:15-cv-00243-DAD-SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017).

Plaintiffs do not allege direct personal involvement by Sheriff Woo in the events which allegedly harmed Plaintiff. Plaintiffs' complaint is devoid of factual allegations that Sheriff Woo was personally involved in, knew of, or refused to interject himself in the actions of his subordinate officers in a way that caused the infringement of Plaintiff's constitutional rights. Instead, Plaintiffs allege only in general terms that Sheriff Woo knew or should have known his subordinate officers engaged in conduct giving rise to the underlying deprivations.

Further, Plaintiffs fail to allege a causal nexus between Sheriff Woo's conduct and a policy or custom that resulted in a violation of Plaintiff's rights. Plaintiffs allege that there were policies or customs within the Placer County Sheriff's Department of "action or inaction" that caused the violation. However, Plaintiffs merely claim that Sheriff Woo "knew or should have known that a substantial number of contacts had occurred between their personnel and persons wherein force had been applied involved mentally ill and/or substance-impaired persons who do not respond in the way persons who are not mentally ill do to orders, commands, brisk and direct language, and escalating force" because Placer County "regularly received calls for assistance with persons undergoing mental health crises." (ECF 12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

¶ 102) However, Plaintiffs fail to identify a single alleged prior incident. (ECF 12 ¶102) These allegations are wholly conclusory and insufficient to state a claim. See <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy.")

Plaintiffs' allegations are improperly pled conclusory statements. See <u>Iqbal</u>, 556 U.S. at 679; see also <u>Baca</u>, 652 F.3d at 1208-1209. A brief comparison to the allegations in <u>Baca</u>, a case in which the Ninth Circuit found the plaintiff had sufficiently alleged a supervisory liability claim, illustrates the pleading deficiencies here.

In <u>Baca</u>, the plaintiff specifically alleged numerous incidents in which inmates in Los Angeles County jails had been killed or injured due to the actions of subordinates of the defendant-supervisor. <u>Baca,</u> 652 F.3d at 1216. The Ninth Circuit explained that by making "detailed factual allegations" about the numerous incidents, plaintiff went "well beyond reciting the elements of a claim" and thus plausibly suggested an entitlement to relief against the defendant-supervisor. <u>Id.</u> By contrast, here only one incident, Plaintiff's excessive force case, is specifically alleged and supported with facts. The remaining allegations set forth above merely recite the elements of Plaintiff's claims in conclusory terms. Unlike <u>Baca</u> where the plaintiff specifically identified prior incidents of use of excessive force and provided factual details about those incidents, here Plaintiff does not identify the "regularly receive[s] calls for assistance" of which he claims Sheriff Woo was aware. Nor does Plaintiff plead facts about these other incidents. <u>Baca</u> itself provides a clear roadmap of what is required.

Accordingly, Plaintiffs' conclusory allegations fall short of the requirement that supervisory liability "must be specifically alleged," and are insufficient to state a section 1983 supervisory liability claim. There is no good faith allegation that can be raised regarding Sheriff Woo's personal involvement. Therefore, Plaintiff's claims against Sheriff Woo must be dismissed.

### C.   Plaintiffs' Second Claim for Against All Defendants for Unreasonable Medical Care under 42 U.S.C. § 1983 Fails as a Matter of Law

After <u>Graham v. Connor</u>, "courts now sensibly analyze both claims of excessive force and failure to render post-arrest medical treatment under the same reasonableness standard of the Fourth

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Amendment." <u>Tatum v. City and Cnty. of San Francisco</u>, 441 F.3d 1090, 1099 (9th Cir. 2006). Providing the "most effective medical care" is not required—the Fourth Amendment only requires that an arrestee receive "objectively reasonable post-arrest care." <u>Borges v. City of Eureka</u>, No. 15-cv-00846-YGR, 2017 WL 363212, at *7 (N.D. Cal. Jan. 25, 2017). In <u>Tatum</u>, the Ninth Circuit held that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR." <u>Tatum</u>, 441 F.3d at 1099 (citing <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408, 1415 (9th Cir. 1986); *see also* <u>Mejia v. City of San Bernardino</u>, No. 11–cv–452, 2012 WL 1079341, at *5 n. 12 (C.D.Cal. Mar. 30, 2012) (noting that <u>Tatum</u> mandates analysis of post-arrest medical care under the Fourth Amendment in the wake of <u>Graham</u>).

Here, deputies promptly summoned medical aid for Christopher Temple. The allegations from Plaintiffs involve failing to provide post shooting medical care by Deputy Vaughan telling the dispatcher "don't <u>send in</u> medical yet" which means that medical units were staged at the scene but waiting for law enforcement clearance to approach the scene. In other words, medical units have already been requested. This is a common practice for medical units responding to an active scene. <u>Dunbar v. City of Riverside</u>, 2014 WL 129622881 *6 (C.D. Cal. 2014) ("It was standard operating procedure for the…dispatcher to tell the medical units to stage when responding to a police emergency.") In <u>Dunbar</u>, the court dismissed plaintiffs' claims for denial of medical care which resulted in a few minute delay of medical care. <u>Id.</u> at *7.

To the extent Plaintiffs might argue the denial of medical occurred because deputies did not react immediately after Temple had twice previously charged at them with a knife, deputies were concerned about safety and that Temple might attempted to get up again. "Delaying aid because of safety concerns—even those created by the officer—does not violate the Constitution." <u>Alford v. Humboldt County</u>, 785 F.Supp.2d 867, 880 (N.D. Cal. 2011); <u>Long v. City and County of Honolulu</u>, 511 F.3d 901, 908 (9th Cir. 2007) (finding no failure to render medical aid rising to the level of gross negligence for "police force's decision to wait for a light armored vehicle for safety reasons does not rise to the level of conscious indifference, even if the delay may have contributed to Long's death.").

The only other allegation is that Deputy Adams began CPR approximately 90 seconds later.

(ECF 12 ¶ 90) Under the law, this is sufficient to show the officers acted reasonably. Estate of Cornejo v. City of L.A., 618 Fed. Appx. 917, 920 (9th Cir. 2015) ("This means that officer must seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.").

Finally, Deputy Michael cannot be held liable based on allegation for failure to provide medical care because it was already at the scene.  Krause v. Cnty. of Mohave, 846 F. Appx 569, 571 (9th Cir. 2021) (affirming grant of summary judgment on denial of medical care claim where "the officers fulfilled their due process obligation by calling for medical assistance within one minute of [plaintiff] being shot"); Mejia v. City of San Bernardino, 2012 WL 1079341, at *5 n. 12 (same); Wilson v. Meeks, 52 F.3d 1547, 1554-55 (10th Cir. 1995) (citing Maddox and finding officer who summoned medical help immediately after shooting but left detainee on the ground face down with labored breathing had no duty to render first aid.) There is nothing within the Complaint to allege any objectively unreasonable actions under the 4th Amendment. As such, the Court should dismiss this claim.

### D. Plaintiffs' Third and Fourth Claims Against All Defendants for Rehabilitation Act and Americans with Disabilities Act Fails as a Matter of Law

Plaintiffs' Third and Fourth claims for relief assert violations of Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act against the County and Sheriff's Department. (ECF 12 at ¶¶ 122-133.) Defendants submit the conclusory allegations are insufficient to state a claim for relief.

To state a claim under the Rehabilitation Act, a plaintiff must allege he/she "(1) is an individual with a disability; (2) is otherwise qualified to receive the benefit; (3) was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Likewise, to state a claim under Title II of the ADA, the plaintiff must allege that he/she: (1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability. Simmons v. Navajo

14

Cty., Ariz., 609 F.3d 1011, 1021–22 (9th Cir. 2010).

A plaintiff must identify more than the general nature of the disability to state a claim. Tennyson v. Cty. of Sacramento, No. 219CV00429KJMEFB, 2020 WL 4059568, at *5 (E.D. Cal. July 20, 2020) (Citing Bresaz v. Cty. of Santa Clara, 136 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015)). Specifically, where "a party alleges that he or she is disabled under the ADA, courts have generally required the party to plead the disability with some factual specificity." Bresaz, 136 F. Supp. 3d at 1136. In Estate of Jackson v. City of Modesto, 2021 WL 4819604 (E.D. Cal. 2021) at *18, the court found plaintiff failed to state RA and ADA claims because "the Complaint does not adequately describe what Jackson's mental health problems were, nor does the Complaint adequately allege how her mental health conditions limited any of the identified major life activities. Without allegations that clarify Jackson's mental health conditions and explain how those conditions affected the identified major life activities, no plausible ADA or RA claim is stated because the allegations do not plausibly suggest that an identified impairment substantially limited a major life activity." This complaint fails for similar reasons. Plaintiffs' discussion on mental health issues (ECF 12 ¶ 16-21) are similarly inadequate under Estate of Jackson and lack fail to describe the mental health problems, or how those conditions affected the identified major life activities.

Here, Plaintiffs state in conclusory fashion that Deputies Michael, Adams, and Vaughan failed to account for his "disability" regarding his "mental impairment." (ECF 12 ¶ 124, 130) However, Plaintiffs only present a conclusory allegation that Plaintiff "had a mental impairment that substantially limited one or more major life activities, at all times material herein." (ECF 12 ¶ 125 and 131) Merely being afflicted with some respective limitations does not qualify as an impairment that substantially limits a major life activity. See 29 C.F.R. § 1630.2(h). Plaintiffs fail to identify any specific life activities that are limited.

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, plaintiffs must prove intentional discrimination on the part of the defendant," which can be satisfied by deliberate indifference. Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. Plaintiffs cannot prove there was any intentional discrimination

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

by the Defendants. Here, Defendants did not fail to reasonably accommodate Temple's disability because the situation escalated quickly over a 30-second period in which Temple exited his vehicle with a knife and then charged at deputies with the knife. Defendants did not have time to employ tactics that would have been likely to resolve the situation without injury to Temple or others. (Compare to Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1232-1233 (9th Cir. 2014). The situation unfolded quickly, and Defendants were required to act quickly to Temple charging deputies with a deadly weapon.

While the Ninth Circuit has not issued further guidance on the Sheehan holding, several district courts have set forth the requirements for the Title II claim it recognized. First, a plaintiff seeking to state an ADA claim under the theory that deputies failed reasonably to accommodate his disability during a traffic stop "bears the initial burden of alleging, and ultimately proving, that a reasonable accommodation exists." Hui Jie Jin v. Alameda Cty., 2019 WL 7831143, at *8 (N.D. Cal. Feb. 4, 2019). To accomplish this, the "plaintiff must identify 'specific reasonable' and 'necessary' accommodations that the defendant failed to provide." Sweiha v. Cty. of Alameda, 2019 WL 4848227, at *6 (N.D. Cal. Oct. 1, 2019) (granting motion to dismiss Title II claim based on failure to accommodate during an arrest).

Second, the plaintiffs must plead facts establishing that the alleged failure to accommodate "caused him to suffer greater injury or indignity than others" who are not disabled. Juricich v. Cty. of San Mateo, 2020 WL 619840, at *6 (N.D. Cal. Feb. 10, 2020); Hui Jie Jin, 2019 WL 7831143 at *8 (dismissing complaint where plaintiff failed to "allege how the failure to provide [proposed accommodations] during the arrest caused him to suffer greater injury or indignity in that process than other arrestees") (internal quotations omitted).

Third, where (as here) plaintiffs are seeking damages under the RA/ADA, they must allege facts establishing "intentional discrimination on the part of the defendant" officers. Hall v. City of Walnut Creek, 2020 WL 408989, at *5 (N.D. Cal. Jan. 24, 2020) (citing Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). This is different from the question whether the deputies failed to accommodate--it requires the plaintiffs to plead facts showing the relevant deputies acted with "an element of deliberateness" in violating Title II. See Hall, 2020 WL 408989 at *5.

16

The complaint pleads deputies should have utilized persons with specialized training in mental illness, approaching Temple in a non-confrontational matter, with an appropriate tone of voice, and using appropriate de-escalation and spacing techniques. (ECF 12 ¶ 125, 131) Here, Plaintiffs admit deputies used de-escalation and spacing techniques by backing up. (ECF 12 ¶ 49 using verbal commands, ¶ 60 deputies "backed-up slightly", ¶ 72 deputies "backed up" again.) Plaintiffs have not identified *any* "reasonable and necessary" accommodation the deputies should have taken." *See* Sweiha, 2019 WL 4848227 at *6 (internal quotations omitted). Nor could they, because there is no accommodation that would have been reasonable under the rapidly unfolding circumstances he alleges. Cf. Harper v. Cty of Merced, 2020 WL 243118, at *9 (E.D. Cal. Jan. 16, 2020) (plaintiff who "disregarded" officer orders and resisted arrest "was not denied the benefit of reasonable accommodation" under the circumstances).

Plaintiffs also fail to allege facts establishing that he suffered "greater injury or indignity [] than other arrestees." Hui Jie Jin, 2019 WL 7831143 at *8. Plaintiffs' claim is that deputies used excessive force in a way that caused Temple injuries. Those are the same injuries any "other arrestees" raising an excessive force claim would allege. *See id.* They do not distinguish Plaintiffs' claim based on Temple's alleged disability. *See id.*; Razavi v. Martins, 2018 WL 1933482, at *3 (N.D. Cal. Apr. 24, 2018) (dismissing ADA claim where the plaintiff did "not include facts alleging that [the arresting officer] caused her to suffer greater injury or indignity than others").

Finally, Plaintiffs allege no facts that could establish "intentional discrimination" by the deputies. *See* Hall, 2020 WL 408989 at *5. Plaintiffs may not rely on conclusory allegations that the officers had an impermissible state of mind at the time of the shooting. *See* Moss v. U.S. Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009) (The "bald allegation of impermissible motive on [a defendant's] part, standing alone, is conclusory and is therefore not entitled to an assumption of truth" at the pleading stage). To plausibly plead the "element of deliberateness," Plaintiffs would have to demonstrate at a minimum that the deputies attempting to detain him were aware of his disability and the "specific[,] reasonable" accommodations it necessitated but nevertheless acted with "deliberate indifference, by withholding" them. Cf. Hall, 2020 WL 408989 at *6 (dismissing ADA claim for failure to plead intentional discrimination even though plaintiffs pleaded that officers were aware of their disabilities

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

because the complaint "fail[ed] to allege facts making deliberate indifference more than merely possible").

In sum, Plaintiffs have alleged in the RA/ADA claims only that deputies failed to accommodate him, with no apparent reasonable accommodation that deputies could have taken given the nature of the event and the rapidly unfolding circumstances. Plaintiffs have plead no facts to convert his excessive force allegation into an RA/ADA violation. Based on the foregoing, Plaintiffs have failed to state a claim pursuant the Rehabilitation Act or the ADA against the County and Sheriff's Department and his Third and Fourth claims for relief must be dismissed.

E.    **Plaintiffs' Fifth and Sixth Claims Against Sheriff Woo for Unwarranted Interference with Familial Association pursuant to 42 U.S.C. § 1983 Fail as a Matter of Law**

This Court has held that a familial association claim can be brought under either the First or the Fourteenth Amendment and that the standard of proof is the same. Kaur v. City of Lodi, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017). To establish a familial association claim, Plaintiffs must show that (1) the liberty interest in having a relationship with decedent Christopher Temple be free from unwarranted state interference was violated; and (2) that the violation was committed though official conduct that "shocks the conscience." Est. of Osuna v. Cnty. of Stanislaus, 392 F. Supp. 3d 1162, 1176 (E.D. Cal. 2019). The Ninth Circuit has also held that recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation. Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail, 628 F. App'x 527, 528 (9th Cir. 2016).

Plaintiffs have again failed to allege a cognizable constitutional violation against Sheriff Woo. As described above under Section IV(A), the complaint fails to allege factual allegations showing that Sheriff Woo personally participated in any of the alleged deprivations or was callously indifferent to Plaintiff's rights. Accordingly, Plaintiff fails to state a viable claim against Sheriff Woo.

"A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); see also Estate of Brooks ex rel. Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). Supervisory officials may only

18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3

be held liable under § 1983 if a plaintiff alleges their "personal involvement in the constitutional deprivation, or ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Keates v. Koile, 883 F.3d 1228, 1242–43 (9th Cir. 2018); Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Plaintiff makes no such factual allegations against Sheriff Woo in the complaint. The complaint only makes cursory and boilerplate allegations that are inadequate to state viable claims. There are no allegations sufficient to state a claim against Sheriff Woo. See Cavanaugh, 2020 WL 6703592, at *29 n.21 ("[W]hile Plaintiffs[ ] conclusory allege the Sheriff was aware deputies failed to follow policy and procedure, there are no allegations as to how he knew this, when he was informed of it, any basis for this knowledge, or which policies he knew were being violated. Thus, such generalized allegations of knowledge fail to meet the *Iqbal* standard.") (citation omitted).

### F. Plaintiffs' Seventh and Eighth Claim for Excessive Force and Unreasonable Medical Care pursuant to California Constitution Article 1 Section § 13 Fails as a Matter of Law Against All Defendants

Plaintiffs also assert an excessive force claim and failure to provide medical care in violation of Cal. Const. art. I, section 13. Plaintiffs' state-based claims claim contains insufficient allegations the Defendants. Article 1 Section 13 does not confer a private cause of action for damages. The Eastern District of California has repeatedly found that "California Constitution Article 1 section 13, upon which this claim rests, does not confer a private right of action for damages." Estate of F.R. Jr. v. County of Yuba, (E.D. Cal., September 19, 2023, 2:23-cv-00846 WBS-CKD) 2023 WL 6130049 *5-7 (concluding that no private cause of action is available under Article I, Section 13); Libby v. City of Girdley, (E.D. Cal., February 17, 2022, 2:21-cv-00017-JAM-AC) 2022 WL 493079 *2-3 ("the Court joins the majority position and concludes there is no private cause of action"); Lesher v. City of Anderson, No. 2:21-cv-00386-WBS-DMC, 2021 WL 2682161, at *5 (E.D. Cal. June 30, 2021); Autotek Inc. v. Cnty. of Sacramento, No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923, at *9 (E.D. Cal. July 25, 2017) ("California Constitution Article 1 Section 13... does not confer a private right of action for damages.").

"Section 13 does not mention damages," and courts have noted they are not aware of "any drafting history, ballot materials, historical records, or common law decisions suggesting section 13 was adopted with an intent to make damages available." Rios v. County of Sacramento, 562 F. Supp. 3d 999,

1022-23 (E.D. Cal. 2021) (Mueller, J.); see also Wigfall v. City & County of San Francisco, No. 06-cv-4968 VRW, 2007 WL 174434, at *5 (N.D. Cal. Jan. 22, 2007) (analyzing plain language and legislative history and finding an "absence of dispositive evidence concerning intent" to create a damages remedy under § 13); Manning v. City of Rohnert Park, No. 06-cv-03435 SBA, 2007 WL 1140434, at *1 (N.D. Cal. 2007) ("Neither the plain language of [ ] article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation."); Leon v. City Of Merced, No. 1:14-cv-01129 GEB, 2015 WL 135904, at *4 (E.D. Cal. Jan. 9, 2015); Brown v. County of Kern, No. 1:06-CV-00121 OWW TAG, 2008 WL 544565, at *17 (E.D. Cal. Feb. 26, 2008).

To determine whether a damages action exists as a remedy to an asserted constitutional violation, the court takes a two-pronged approach. Katzberg v. Regents of University of California 29 Cal.4th 300, 317 (2002). First, the court will inquire as to whether there is evidence from which the court may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation. Id. Second, if no affirmative intent either to authorize or to withhold a damages remedy is found, the court will undertake the "constitutional tort" analysis adopted by Bivens. Id. The relevant factors the court will analyze include (1) whether an adequate remedy exists; (2) the extent to which a constitutional tort action would change established tort law; and (3) the nature and significance of the constitutional provision. Bivens v. Six Unknown Fed. Narcotics Agents 403 U.S. 388 (1971). Alternatively, if these factors favor recognizing a constitutional tort, the court must consider "special factors, ... including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." Id.

Here, under the first prong of the Katzberg test, the plain language of the California Constitution does not provide for a private cause of action for damages. In Wigfall, the Court examined "the plain language of the statute to determine whether the text contemplates recovery of damages for the provision's violation" and determined that it was "apparent from the language, article I, § 13 does not contain any specific authority for the recovery damages." Wigfall v. City and County of San Francisco (N.D. Cal., Jan. 22, 2007, No. C 06-4968 VRW) 2007 WL 174434, at *5; see, Roy v. Cty. of Los

Angeles, 114 F. Supp. 3d 1030, 1043 (2015) (the "Court finds Wigfall particularly instructive given its careful analysis of article I, section 13 in accordance with the Katzberg framework.") The Court further examined the legislative history of the provision and found there to be no evidence to suggest an intent to create a damages remedy. Id. Therefore, the Wigfall court moved to the second prong of Katzberg to evaluate the Bivens factors. Id. Likewise, the Court here should move on and evaluate the Bivens factors.

As to the Bivens factors, the first factor weighs in favor of the Defendants. California courts have found that there are a variety of alternative remedies available under state and federal law. Specifically, a federal claim under 42 U.S.C. section 1983 is available. Roy at 1043; Wigfall at *5 (noting that the plaintiff had an "equally effective monetary remedy under 42 USC section 1983…"). As to the second factor, as discussed above, recognizing a private right of action would change established tort law because it would create a new claim for relief which the Eastern District of California has repeatedly found is not a proper claim. Moreover, even though Article I, section 13 may safeguard a significant constitutional right, the importance of a constitutional provision does not require the recognition of a damage action to redress its violation. Roy, 114 F.Supp.3d at 1043; Katzberg, 29 Cal.4th at 328. For these reasons, article I section 13 does not confer a private cause of action for monetary damages and Plaintiff cannot rely on such. See, Ramirez v. County of El Dorado, 2020 WL 1673898, *8 (E.D. Cal. Apr. 06, 2020) (relying on Roy to dismiss plaintiffs' claim under Cal. Const. Art. I, sect. 13 as it does not permit a private right of action to recover monetary damages); Buzayan, 2007 WL 2288334, at *8-9 ("This Court agrees with the reasoning of the [Wigfall] court and finds that there is no remedy of monetary damages under California Constitution article I, § 13").

Even if Article I section 13 provides a private cause of action, to the extent Plaintiffs seek to hold Sheriff Woo liable for the actions of Deputies Adams, Michael, and Vaughan, Sheriff Woo is immune from liability. As discussed above, Plaintiffs do not allege Sheriff Woo's personally engaged in misconduct. Rather, Plaintiffs merely allege he failed to intervene to prevent an alleged constitutional violation by a subordinate. Therefore, Sheriff Woo's liability essentially rests on the actions of others. However, Cal. Gov't Code section 820.8 provides that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." For that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

4873-7032-4611, v. 3

reason, Sheriff Woo has immunity from this state law claim.

Moreover, similar to Plaintiffs' excessive force claims pursuant to section 1983, as discussed above, Plaintiffs' state-based excessive force claim contains insufficient allegations that would allow for individual liability on the part of Sheriff Woo. Estate of Osuna v. County of Stanislaus (E.D. Cal. 2019) 392 F.Supp.3d 1162, 1179 (applying the same analysis to dismiss plaintiff's cause of action alleging excessive force under Article 1, section 13 of the California Constitution as the court did under section 1983). The facts alleged in the complaint are insufficient to support either theory for individual liability. Therefore, Plaintiff's Seventh claim for relief against Sheriff Woo should be dismissed.

### G. Plaintiffs' Ninth Claim for Relief Against Sheriff Woo for Bane Act under Civil Code § 52.1 Fails to State Sufficient Facts

California Civil Code "Section 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply…absent a showing that the act was done to interfere with a separate state or federal constitutional right." Lanier v. City of Fresno, 2011 U.S. Dist. LEXIS 4631 (E.D. Cal. 2011). In Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 801–802 (Nov. 17, 2017), the Court held that the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the officer had a specific intent to violate the arrestee's right. Id. In Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) the Court stated:

> "Cornell also makes clear, however, that the Bane Act imposes an additional requirement beyond a finding of a constitutional violation. Cornell explained that '[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief.' Id. at 383. Accordingly, Cornell held that '**the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the…officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure**.' Id. at 384." (Emphasis added.)

Here, there is no allegation that Sheriff Woo interacted with or even knew of Plaintiff during his vehicle stop and use of force used by Deputies Michael, Adams, and Vaughan. Plaintiff has not alleged

facts from which it could plausibly find that Sheriff Woo had a specific intent to violate his rights. Plaintiffs allegations that Deputies Michael, Adams, and Vaughan used force on one occasion while effectuating Plaintiff's arrest taken together with the allegation that Sheriff Woo was the final policy maker for the County does not permit the Court to infer liability or finding that Sheriff Woo acted recklessly or with deliberate indifference in any other way. Lapachet v. California Forensic Medical Group Inc., No: 1:17–cv–01226–DAD–EPG, 313 F.Supp.3d 1183, 1196, (E.D. Cal. 2018) (dismissing sheriff from Bane Act claim when " plaintiff's complaint contains no factual allegations against defendant Christianson…[or] nothing in the complaint that plausibly alleges that defendant Christianson's acts or omissions "proximately caused" plaintiff's injury; Estate of Alejandro Sanchez v. County of Stanislaus, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868 at *10, (E.D. Cal. 2019) (dismissing claim against sheriff because "the complaint contains no factual allegations against defendant).

Therefore, the Complaint fails to allege any facts against Sheriff Woo that rise to the level of him having a specific intent to violate Plaintiff's rights and that the Bane Act claim against Sheriff Woo should be dismissed.

### H. Plaintiffs' Twelfth Claim and Thirteenth Claims for Relief Against Sheriff Woo for State-Law Negligence and Wrongful Death Claims Fails to State a Viable Claim

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." Quiroz v. Seventh Ave. Ctr., 140 Cal. App. 4th 1256, 1263 (2006). The Complaint does not contain any allegations that Sheriff Woo was personally responsible for the Plaintiff's arrest or alleged excessive force. Instead, the state law claims against Sheriff Woo are brought merely because of his position as the Sheriff of Placer County and a "special relationship" with the deputies. (ECF 12 ¶ 189 and 197) The mere allegations that Sheriff Woo is the Sheriff of Placer County and in charge of his subordinates are insufficient to maintain claims against Sheriff Woo for negligence or wrongful death claim. Estate of Alejandro Sanchez v. County of Stanislaus, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868 at *12, (E.D. Cal. 2019) (finding plaintiffs failed to state a special relationship claim against the sheriff because "the complaint does not allege that defendant Christianson or any of the unnamed

23

policy-making defendants had any relationship with the decedent at all."). Moreover, Plaintiffs cannot maintain claims for negligence or wrongful death against Sheriff Woo for discretionary decisions he made as the head of Placer County Sheriff's Office. <u>Arceo v. City of Roseville,</u> 2023 WL 5417210 (E.D. Cal., August 22, 2023) at *13 (finding plaintiff has not alleged sufficient facts plausibly indicating that defendant [supervisor] was personally involved or even aware of plaintiff's need for medical care and dismissing state law claim for negligence).

The complaint does not allege any facts suggesting that Sheriff Woo took any specific action or conducted themselves in a way that did not meet the appropriate standard of care. Plaintiffs' complaint alleges legal conclusions rather than facts. <u>Estate of Bonilla v. County of Merced,</u> 2019 WL 1405551 at *9 (E.D. Cal. 2019) Furthermore, Sheriff Woo is entitled to discretionary immunity pursuant to Cal. Gov't Code § 820.8. He is immune from liability for the actions of his subordinates. <u>Weaver By & Through Weaver v. State</u>, 63 Cal. App. 4th 188, 203 (1998). Therefore, Plaintiffs' claims for negligence and wrongful death must be dismissed.

## VI.    <u>CONCLUSION</u>

For each of the forgoing reasons, Defendants seeks to dismiss all claims for relief against Sheriff Woo and Plaintiffs Second, Third, Fourth, Seventh and Eighth claims against all Defendants. These claims fail as a matter of law, fail to state sufficient facts or fail to state a viable claim.


Dated:  December 1, 2023                         PORTER SCOTT
                                                A PROFESSIONAL CORPORATION

                                       By  /s/Carl L. Fessenden
                                               Carl L. Fessenden
                                               Matthew W. Gross
                                               Attorneys for Defendants

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
4873-7032-4611, v. 3